# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 23, 2024 Session

## STATE OF TENNESSEE v. GAVIN QUAEDVLIEG

**Appeal from the Criminal Court for Knox County**
No. 118600    Steven W. Sword, Judge

No. E2023-00542-CCA-R3-CD

FILED
FEB 27 2024
Clerk of the Appellate Courts
REc'd By ᏒᏀᏑoᎩᎯ

A Knox County jury convicted the Defendant, Gavin Quaedvlieg, of rape. The Defendant appeals, contending that the prosecutor impermissibly commented upon his silence at trial during the State's rebuttal closing argument and that the trial court erred in denying his motion for new trial on this issue. The State argues that the Defendant has waived plenary review of this issue and that he is not entitled to plain error relief. In his reply brief, the Defendant counters that he has not waived plenary review and that, in any event, he is entitled to plain error relief. We conclude that the Defendant has waived plenary review and that he is not entitled to plain error relief. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Scott A. Lanzon, Knoxville, Tennessee, for the appellant, Gavin Quaedvlieg.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Joanie S. Stewart, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

On February 24, 2021, a Knox County grand jury returned a single-count presentment charging the Defendant with rape, a Class B felony. *See* Tenn. Code Ann. § 39-13-503. The presentment alleged that the Defendant had sexually penetrated the victim,

B.B.,[1] where the Defendant "had reason to know that [B.B.] was physically helpless at the time of the penetration[.]" *See id.* § 39-13-503(a)(3).

A jury trial ensued on January 9, 2023. The record on appeal does not contain a transcript of the evidence presented at trial, any exhibits entered at trial, or a transcript or copy of the trial court's jury instructions. The appellate record does contain, however, a transcript of the parties' closing arguments to the jury. The transcript reveals that, immediately prior to closing arguments, the trial court instructed the jury,

> [A]s I told you yesterday, statements of the attorneys are not evidence. However, their arguments to you can be very helpful to you in understanding the evidence that you've heard, as well as the instructions of law that I will give you after their arguments. So I do encourage you to listen and consider very carefully what the lawyers have to say.

Following this instruction, the parties made their closing arguments to the jury.

The arguments for both parties focused on the victim's credibility as a testifying witness. The parties also focused much of their arguments on text messages that were exchanged between the Defendant and the victim both before and after the incident in question. Near the beginning of the Defendant's closing argument, defense counsel posed these questions to the jury: "Do you think that people, all of a sudden, just come up with facts on their own that help their case three years later? Do you think it's odd that there's one witness in this case?" Defense counsel concluded his closing argument as follows:

> And I ask you to have the courage to do what you're sitting there to do, what you're tasked to do, judge the facts. You have someone who's lying to you from the start of her testimony until the end. That's it. And I assure you, if [the Defendant] had inconsistencies in anything, there's no one else testifying, there's no police, there's no rape crisis center, there's no one else, no one from UT. Think about that.

The State immediately commenced its rebuttal closing argument with the following statement:

> I mean, there's nobody. It's just her. He asked you a question, is it strange that there's one witness when there's two people in the room? When there's two people there, is it strange that there's one witness? How does

---

[1] It is the policy of this court to refer to victims of sexual assault by their initials.

rape happen? How does sexual assault happen? Does it operate in darkness? Can it occur within a relationship of trust?

Later, about midway through the State's rebuttal argument, the prosecutor stated,

> They've talked about, well, I'm sure there's more out there that you didn't hear, that you didn't hear. We're talking about two people in a room. And [B.B.] told you what happened in there. There's not a video. There's not. And you're being asked to judge the available evidence. But is it reasonable that that's the evidence that we would have? Is it reasonable? I mean, it is what it is.

Nearing the end of the State's rebuttal argument, the prosecutor argued,

> And it's also important that she took the stand to tell you what happened, that she has talked about this for three years, what she remembers. You know, you can judge when you're—when you're looking at the credibility of a witness. You know, there were two people in that room. Wouldn't it be easier for her to say, yes, I remember saying no; when he was on top of me and I woke up from consciousness [sic], I remember saying no, and he kept going? That's not what she told you. She told you what she remembered.

The State concluded its rebuttal argument by again stating that the text messages between the Defendant and the victim corroborated the victim's testimony regarding her physical helplessness at the time of the incident. The Defendant did not object to any portion of the State's closing arguments.

On January 10, 2023, the jury convicted the Defendant of rape as charged in the presentment. On February 3, 2023, prior to his sentencing hearing, the Defendant filed a motion for new trial, wherein he argued that the prosecutor's comments during closing argument entitled him to relief because they impermissibly referenced his decision not to testify at trial.

At the sentencing hearing on April 4, 2023, a transcript of which is included in the record on appeal, the State entered into evidence the Defendant's presentence investigation report and the Defendant's psychosexual risk assessment. Additionally, the prosecutor moved into evidence "the text messages, in their entirety," and stated, "I can't remember if we marked that during the course of the trial." The trial court stated, "I thought we

did[,]" to which defense counsel responded, "We did." The trial court accepted the text messages as an exhibit to the sentencing hearing.[2]

The trial court sentenced the Defendant to eight years as a Range I offender, with the sentence suspended to supervised probation following the service of twelve months in incarceration. The trial court also sentenced the Defendant to community supervision for life and ordered him to register with the Tennessee Bureau of Investigation Sexual Offender Registry. *See* Tenn. Code Ann. §§ 39-13-524(a)(1), 40-39-201 to -218.

The Defendant's motion for new trial was heard on May 25, 2023. A transcript of this hearing is not included in the record on appeal. The trial court denied the motion for new trial. This timely appeal follows.

## II. ANALYSIS

The Defendant argues on appeal that the State commented in its rebuttal closing argument on his decision not to testify at trial, in violation of his Fifth Amendment right to remain silent. The State contends that the issue is waived due to the Defendant's failure to lodge a contemporaneous objection and his failure to perfect an adequate record on appeal. In his reply brief, the Defendant counters that the record is adequate for this court to conduct a meaningful review or, in the alternative, that he is entitled to plain error relief.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." "[T]he Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States." *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The Tennessee Constitution provides that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. Additionally, "[t]he failure of the party defendant to make a request to testify and to testify in the defendant's own behalf shall not create any presumption against the defendant." Tenn. Code Ann. § 40-17-103.

For decades, Tennessee law has recognized that prosecutors shall not make arguments to the jury based upon a criminal defendant's failure to testify. *See Staples v. State*, 14 S.W. 603, 603 (Tenn. 1890) (relying on The Act of 1887, c. 79, a previous version of current Code section 40-17-103). In 1965, the United States Supreme Court held that

---

[2] Because the exhibits from trial were not included in the record on appeal, we are unable to discern if the "entirety" of the text messages entered at the sentencing hearing were the same messages presented to the jury or if the jury was presented with a redacted version of those messages.

- 4 -

the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). In the intervening years, Tennessee courts have cautioned that "[t]he subject of a defendant's right not to testify should be considered off limits to any conscientious prosecutor." *State v. Hale*, 672 S.W.2d 201, 203 (Tenn. 1984) (internal quotations omitted) (quoting *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

Since *Griffin*, however, the United States Supreme Court has rejected a broad reading of its decision in that case that "any 'direct' reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment[.]" *United States v. Robinson*, 485 U.S. 25, 31-32 (1988). In *Lockett v. Ohio*, for instance, the Court held that the prosecutor's description of the state's evidence as being "unrefuted" and "uncontradicted" did not violate the Fifth Amendment, where defense counsel had previously "focused the jury's attention on [the defendant's] silence." 438 U.S. 586, 595 (1978). In *Robinson*, the Court explained that there is no violation of the Fifth Amendment privilege where "the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel[.]" 485 U.S. at 32 (where defense counsel had argued to the jury that the prosecution had breached its "duty to be fair" and unfairly denied the defendant the opportunity to explain his actions). The *Robinson* Court emphasized that claims of this nature must be examined in the context of the trial and that "it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another." *Id.* at 33 (citing *Lockett*, 438 U.S. at 595).

The Tennessee Supreme Court has adopted a two-part test for ascertaining whether a prosecutor's remarks amount to an improper comment on a defendant's exercise of the constitutional right to remain silent and not testify. "This two-part test inquires: (1) whether the prosecutor's manifest intent was to comment on the defendant's right not to testify; or (2) whether the prosecutor's remark was of such a character that the jury would necessarily have taken it to be a comment on the defendant's failure to testify." *State v. Jackson*, 444 S.W.3d 554, 587-88 (Tenn. 2014). If a reviewing court concludes that a prosecutor's remarks were constitutionally impermissible under this two-part test, a non-structural constitutional error has occurred, and the court must determine if the State has met its burden of demonstrating that the error was harmless beyond a reasonable doubt. *Id.* at 591 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). When conducting this analysis, we should consider "the nature and extensiveness of the prosecutor's argument, the curative instructions given, if any, and the strength of the evidence of guilt." *Id.* at 591.

- 5 -

Generally, we review de novo a defendant's claim of improper prosecutorial argument due to commentary on the defendant's decision not to testify at trial. *See id.* at 588.

## A.      Waiver for Failure to Contemporaneously Object

While we generally apply a de novo standard of review to claims such as the one at bar, *see id.*, "plain error review is the appropriate standard of review to apply to claims of alleged prosecutorial misconduct during closing argument when no contemporaneous objection was lodged at the time of the alleged misconduct but the claim is raised in the motion for a new trial." *State v. Enix*, 653 S.W.3d 692, 700-01 (Tenn. 2022). There is no dispute here that the Defendant failed to object contemporaneously to the State's arguments that he is now challenging on appeal. Nor is there any dispute that the Defendant first raised this issue in his motion for new trial. Pursuant to *Enix*, the Defendant has waived plenary review and is entitled only to plain error review.

## B.      Plain Error Review

In conducting plain error review, our court will reverse for plain error only if the five following prerequisites are satisfied:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be present in the record before an appellate court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. *Id.* at 283. In order to warrant plain error relief, the magnitude of the error must have been so significant "that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)). A defendant has the burden of persuading the appellate court that plain error exists. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

The Defendant is not entitled to plain error relief because the appellate record does not clearly establish what happened in the trial court regarding this issue. We reiterate that the appellate record does not contain the transcript of the evidence presented at trial, the

exhibits entered at trial, the trial court's instructions to the jury, or a transcript of the motion for new trial hearing. Even outside the context of plain error review, the appellant bears the burden of preparing a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of the appeal." *See* Tenn. R. App. P. 24(b). "[A] defendant is effectively denied appellate review of an issue when the record transmitted to the appellate court does not contain a transcription of the relevant proceedings in the trial court." *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990).

The Defendant has argued in his brief and at oral argument that his issue is confined to what occurred during closing arguments, and, because the transcript of the closing arguments is included in the record, the appellate record contains a complete account of what occurred below regarding this issue. We disagree. Even if we conducted a plenary review of the Defendant's issue—which we are not due to his failure to lodge a contemporaneous objection—the success of the Defendant's claim would hinge, in part, upon our review of "the curative instructions given, if any, and the strength of the evidence of guilt" as part of a constitutional harmless error analysis. *See Jackson*, 444 S.W.3d at 591. In the plain error context, in order to satisfy the third prerequisite—i.e., a substantial right of the Defendant must have been adversely affected—the Defendant must show that he was prejudiced by the error or, in other words, that the error "must have affected the outcome of the trial court proceedings." *State v. Maddin*, 192 S.W.3d 558, 562 (Tenn. Crim. App. 2005) (citing *United States v. Olano*, 507 U.S. 725, 732-37 (1993)). Similarly, in considering whether consideration of the error is necessary to do substantial justice, we must determine whether "the error was so significant that it 'probably changed the outcome of the trial.'" *State v. Knowles*, 470 S.W.3d 416, 425 (Tenn. 2015) (quoting *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010)). We cannot judge how any alleged error might have affected the outcome of the trial proceedings when the record does not reflect what happened at trial. *See Bledsoe*, 226 S.W.3d at 358 (declining plain error relief where the appellant's failure to convey a complete transcript of the trial proceedings "clouded the issue" as it related to the tactical-decision factor).

At oral argument, the Defendant insisted that the transcript of the proof at trial was unnecessary and invited us to rely instead upon the attorneys' summation of the proof during their closing arguments. We decline this invitation. The trial court correctly instructed the jury prior to closing arguments that "statements of the attorneys are not evidence." Indeed, it is well-established that "statements made by counsel during a hearing or the trial are not evidence" and cannot "be considered in lieu of a verbatim transcript or statement of the evidence and proceedings." *Draper*, 800 S.W.2d at 493.

- 7 -

For these reasons, the record does not clearly establish what occurred in the trial court. The inadequacy of this record—in itself a sufficient ground for the denial of plain error relief—prevents this court from determining whether a substantial right of the accused was adversely affected or whether consideration of the alleged error is necessary to do substantial justice. The Defendant has failed to meet his burden of establishing plain error. Additionally, to the extent that the Defendant seeks to raise an independent issue concerning the trial court's denial of his motion for new trial, the Defendant's failure to include a transcript of the motion hearing compels us to presume that the trial court correctly denied the motion. *See State v. Braden*, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993).

## III. CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

KYLE A. HIXSON, JUDGE